UNITED STATES of America, Plaintiff,

v.

ALLIED–SIGNAL CORP., et al., Defendants.

Nos. C 83–5898 FMS, C 83–5896.

United States District Court,
N.D. California.

Jan. 10, 1990.

Rodney H. Hamblin, Asst. U.S. Atty., Chief, Land & Natural Resources Div., Charles M. O'Connor, Asst. U.S. Atty., F. Henry Habicht II, Asst. Atty. Gen., Land and Natural Resources Div., Barry S. Sandals, Sr. Counsel, Richard L. Beal, Environmental Enforcement Section, Land and Natural Resources Div., U.S. Dept. of Justice, San Francisco, Cal., Brian Faller, William W. Westernfield, III, Karen Dworkin, U.S. Dept. of Justice, Land and Natural Resources Div., Washington, D.C. (J. Martin Robertson, Dept. of Navy, Office of Gen. Counsel, Litigation Office, San Francisco, Cal., of counsel), for U.S.

Gregory J. Hobbs, Jr., Anthony van Westrum, Zach Miller, Davis, Graham & Stubbs, Denver, Colo., for ESI Chemicals, Inc.

Daniel Leach, Wayne Collins, Leach, McGreevy, Eliassen & Leach, San Francisco, Cal., for Joe Sobotka and Wilda Sobotka.

Robert Crow, Boornazian, Jensen & Garthe, Oakland, Cal., Norman LaForce, Boornazian, Jensen & Garthe, Oakland, Cal., for Chemical & Pigment Co.

Barry D. Hovis, Harry Endsley, Adams, Sadler & Hovis, San Francisco, Cal., for O.E. Cooper, James Cooper, and Elizabeth Cooper.

Judith A. Wenker, Leslie C. Randall, Texaco, Inc., Universal City, Cal., Gregory R. McClintock, Patrick W. Dennis, McClintock, Weston, Beenshoof, Rochefort, Rubalcava & Maccui, Los Angeles, Cal., for Getty Oil Co. and Texaco, Inc.

Michael L. Whitcomb, Asst. Gen. Sol., Union Pacific R. Co., Los Angeles, Cal., for Sacramento Northern R. Co.

Barry P. Goode, John D. Edgcomb, McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for Allied Chemical Corp. and Allied–Signal Corp.

Ann Fingarette Hasse, Charles Ferguson & Co., Inc., San Francisco, Cal., David W. Long, Southern Pacific Transp. Co., San Francisco, Cal., John Ernster, Los Angeles, Cal., for Southern Pacific Transp. Co.

John F. Barg, Deborah J. Schmall, Elyse Axell, James A. Bruen, Ronald C. Hausmunn, Gretchen A. Beck, Landels, Ripley & Diamond, San Francisco, Cal., for Atchison, Topeka, and Santa Fe Railway Co., Santa Fe Industries, Inc., Santa Fe Land Improvement Co. and Santa Fe Southern Pacific Foundation.

Frederick Mahan, James Peterson, H. Renton Rolph, Mahan & Rolph, Inc., San Francisco, Cal., Patrick Charles Smith, Nancy Aptekar, John F. Meadows, Meadows, Smith, Lenker, Sterling & Davis, San Francisco, Cal., for ESI Chemicals, Inc.

Anthony Van Westrum, Davis, Graham & Stubbs, Denver, Colo, John MacDonald Smith, DAvid W. Long, San Francisco, Cal., John H. Ernster, Clay M. Smith, Michael L. Whitcomb, Jeff S. Asay, James C.EC Barclay, Los Angeles, Cal., Gregory R. McClintock, Patrick W. Dennis, Thomas J.P. McHenry, McClintock, Weston, Benshoof, Rochefort, Rubalcava & MacCuish, Los Angeles, Cal., Mauryne S. Fennell, Leslie C. Randall, Judith Wenker, Universal City, Cal., for Getty Oil Co.

## ORDER

FERN M. SMITH, District Judge.

This case concerns efforts on the part of plaintiff, the United States Navy, to recover the costs of cleaning up portions of the Concord Naval Station which once were owned by defendants, later were acquired by the Navy via eminent domain, and now are known to contain toxic pollutants. In 1983, plaintiff brought this action for recovery of clean-up costs pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq.*, which authorizes recovery of past and future clean-up expenditures from, *inter alia,* former owners of contaminated sites.

In 1986, Congress amended and clarified CERCLA by enacting the Superfund Amendments and Reauthorization Act (SARA). The pending motions arose when defendants noticed the depositions of vari-

ous individuals whose testimony plaintiff contends is relevant only to determination of the appropriate remedial action plan (or "clean-up plan"). Relying on the newly enacted CERCLA amendments contained in SARA, plaintiff contends that the Court's review of the Navy's adopted clean-up response is subject only to deferential review based on the administrative record. Therefore, plaintiff seeks to proscribe any discovery outside that record. Defendants, also relying on the newly enacted provisions in SARA, argue that the Navy's proposed clean-up plan is subject to *de novo* review by this Court.[1]

The parties have raised an issue of first impression. The statute in question has yet to be applied to facts like those present here. Simply stated, the controversy is this: Plaintiff contends that its power to formulate a remedial action plan and bring this action for recovery of clean-up costs is derived from the power granted to the President by § 104 of CERCLA. SARA § 113(j) provides that the President's (or his delegatee's) choice of a remedial action plan formulated pursuant to CERCLA § 104 is to be given deference by reviewing courts.[2]

Defendants, however, contend that plaintiff's action for recovery of clean-up costs is brought pursuant to SARA § 211, which governs toxic contamination of facilities owned or managed by the Department of Defense ("DOD") and empowers the Secre-

tary of Defense, or his delegatee, to devise an appropriate clean-up plan. SARA § 120 provides that the federal agencies, such as the DOD, are to be treated like private landowners under the statute and says nothing about according deference to the Secretary's adopted remedial action plan. Thus, the applicable scope of review hinges upon which portion of CERCLA/SARA is found to authorize this cost recovery action.

## PLAINTIFF'S ARGUMENT

Relying on CERCLA § 104 and SARA § 113(j), plaintiff argues that the Court may review the adequacy of the Navy's planned response action only by examining the administrative record under the arbitrary and capricious standard. Plaintiff alleges that, insofar as it affects the Concord Naval Station, the President delegated his powers under § 104 to the Secretary of Defense, pursuant to executive order. The Secretary of Defense, in turn, allegedly delegated his powers to the Secretary of the Navy.

The Navy undertook a variety of studies to determine the nature of the hazardous contamination at the Naval Station and then developed and analyzed various clean-up alternatives. Navy personnel prepared a variety of reports which were published for public review and comment, and consulted with the Fish and Wildlife Service

---

1. The parties do not dispute that the issue of defendants' liability remains to be decided. It is the adequacy of the clean-up response, i.e., the remedy and, if defendants are found liable, the total amount of damages, which the Navy alleges is subject to deferential review. In other words, if and when defendants are found liable, plaintiff wants to simply hand defendants a bill for the cost of cleaning up the polluted site without having to prove to the Court, *de novo*, that the clean-up plan selected was necessary, adequate, or equitable.

2. Section 104 of CERCLA authorizes the government to take response actions whenever there is a "release" or threatened release of any "hazardous substance." 42 U.S.C. § 9604(a). Response actions may include "remedial" actions designed to effect a permanent remedy. 42 U.S.C. § 9601(24). Section 104 provides that "the President shall select remedial actions to carry out this section ..." 42 U.S.C. §§ 9604(c)(4).

CERCLA § 107 provides, inter alia, that "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, ... from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—(A) all costs of removal or remedial action incurred by the United States Government ... not inconsistent with the national contingency plan." 42 U.S.C. § 9607(a). The 1986 SARA amendment to CERCLA provides that "[i]n any judicial action under this chapter, the court shall uphold the President's decision in selecting the response action unless the objecting party can demonstrate, on the administrative record, that the decision was arbitrary and capricious or otherwise not in accordance with law." 42 U.S.C. § 9613(j)(1).

and the Environmental Protection Agency (EPA), allegedly giving defendants the opportunity to participate in those consultations. Finally, the Navy prepared a Proposed Remedial Action Plan and solicited comments in response to the plan from "interested parties."

After considering the comments and consulting with other agencies as well as with defendants, the Navy adopted the Final Remedial Action Plan on April 6, 1989. The administrative record was completed on that date and allegedly contains all of the information that went into developing the Final Plan, as well as the Plan itself. Plaintiff urges this Court to review the Navy's choice of clean-up alternatives for the Naval Weapons Station as stated in § 113(j) of CERCLA and, based upon that scope of review, to bar discovery outside the administrative record.

This is the first reported case in which the protections of § 113(j) have been invoked by a federal agency which is both the owner of the contaminated property in question and the entity responsible for devising a remedial action plan. The situation is further complicated by defendants' allegation that plaintiff is responsible for at least some of the contamination and is itself potentially liable under CERCLA.

Reported cases under CERCLA generally fall into one of two categories. There are cases in which the E.P.A. is supervising or undertaking the clean-up of property it does not own (although the property may be owned by some other government agency). *See e.g., United States v. Hardage,* 663 F.Supp. 1280 (W.D.Okla.1987), *United States v. Ottati & Goss,* 630 F.Supp. 1361 (D.N.H.1985); *United States v. Seymour Recycling Corp.,* 679 F.Supp. 859 (S.D.Ind. 1987); *United States v. Rohm & Hass Co.,* 669 F.Supp. 672 (D.N.J.1987). In these cases, courts have deferred to the remedial action plan selected by the E.P.A.

In the other category of cases, a landowner is suing prior landowners or neighbors which the landowner contends contaminated his or her property. *See e.g., Wickland Oil Terminals v. Asarco, Inc.,* 792 F.2d 887 (9th Cir.1986); *Artesian Water*

*Co. v. New Castle County,* 659 F.Supp. 1269 (D.Del.1987), *aff'd.,* 851 F.2d 643 (3d Cir.1988). Defendants state that "no court has ever limited its review in the second category of cases to an administrative record." Allied's Opp. to Plaintiff's Motion at 8.

## DEFENDANTS' ARGUMENT

SARA § 211, entitled "Department of Defense Environmental Restoration Program" contains a subsection entitled "Responsibility for Response Actions", which provides as follows: "The Secretary shall carry out (in accordance with the provisions of this chapter and CERCLA) all response actions with respect to releases of hazardous substances from each of the following: (A) Each facility or site owned by, leased to, or otherwise possessed by the United States and under the jurisdiction of the Secretary...." 10 U.S.C. § 2701(c)(1).

The crux of defendants' argument is that, through SARA, Congress delegated the authority to clean up DOD facilities such as the one at issue here directly to the Secretary, not to the President. Therefore, CERCLA § 113(j), giving deference to the *President's* (or his delegatee's) choice of a clean-up plan, is inapplicable. They argue that the Navy's authority to clean up the Naval Station stems from SARA § 211 and, therefore, must be consistent with SARA § 120.

SARA § 120, entitled "Federal Facilities" provides that "Each department, agency, and instrumentality of the United States ... shall be subject to, and comply with, this Act in the same manner and to the same extent, both procedurally and substantively, as any nongovernmental entity, including liability under section 107 of this Act." 42 U.S.C. § 9620(a)(1). Defendants argue that, especially where the government agency responsible for the contaminated site is itself potentially liable under CERCLA, as is the case here, the above language indicates Congress' intent to place the same burdens on the government agency seeking reimbursement for clean-up costs as it placed on private landowners seeking similar contribution or re-

imbursement. A private landowner would, of course, have to prove its damages in court prior to recovery. Defendants argue as follows:

> Clearly the Navy should not be able to select a remedy that will enhance the value of its own property, and then, when seeking to have someone else pay for it, take refuge behind an administrative record of its own making. Congress (and the President in his delegation) intended that where federal land is being cleaned up, the federal government must seek to recover its costs in just the same manner as any other property owner. The Navy will have to prove, at trial, by a preponderance of the evidence that the remedy it selected is consistent with the National Contingency Plan ... Put another way, it will have to prove its damages (the cost of remediating the sites) and that it is entitled to recover them. Allied's Memo. in Opp. to Plaintiff's Motion at 21.

## RETROACTIVITY OF SECTION 113(j)

■ Alternatively, defendants argue that even if the Navy's cost recovery action is governed by the terms of CERCLA § 104, *de novo* review of the Navy's remedial action plan is still necessary because this action was filed before enactment of the SARA amendment contained in § 113(j). Defendants contend that § 113(j) changed the standard of review of remedial action plans from *de novo* to arbitrary and capricious, and ought not to be applied retroactively. Plaintiff counters that CERCLA provided for record review even before the enactment of SARA or, alternatively, that § 113(j) does apply retroactively.

Plaintiff cites various comments in SARA's legislative history by way of proving that § 113(j) merely clarified existing law. For example, Senate Report No. 11, 99th Congress, 1st Sess. 57 (1985) states that the record review provision "clarifies and confirms that judicial review of a response action is limited to the administrative record and that the action shall be upheld ... unless the action was arbitrary and capricious ... Defendants argue that comments made pursuant to enactment of SARA (enacted in 1986) are irrelevant to determining congressional intent as to CERCLA (enacted in 1980).

It appears, given the many cases cited on both sides of the argument, that the law regarding judicial review of remedial action plans was unclear until the enactment of SARA. Some courts applied a deferential standard to record review; others undertook *de novo* review. Congress apparently passed § 113(j) for just that reason. The question here is whether the (now) clear intent of Congress should be heeded in a case filed prior to congress' clarification of its intent.

At least one district court confronted precisely that question and concluded that § 113(j) should apply retroactively. *See U.S. v. Seymour Recycling Corp.*, 679 F.Supp. 859 (S.D.Ind.1987). This Court finds the reasoning of that case persuasive and adopts its conclusion. Moreover, where a statute is amenable to two distinct readings and Congress amends the law in order to clarify its aim, retroactive application of the amendment is more likely to give effect to Congress' initial intention. Thus, the only remaining question is whether this action is governed by CERCLA § 104, as amended by SARA § 113(j), or by SARA §§ 120 and 211.

## THIS COURT'S INTERPRETATION OF STATUTE

■ Plaintiff is correct in noting that nothing in SARA's language or legislative history explicitly states that the authority granted the President under CERCLA § 104 no longer extends to DOD facilities; neither does the statute provide guidance as to what difference it makes, if any, that the agency to which the President delegates his powers under § 104 is also the owner of the contaminated site and, therefore, has a vested interest in devising the remedial action plan.

By enacting SARA, however, Congress intended to distinguish between hazardous waste clean-up at DOD facilities and similar response actions at other facilities. If

**1558**

a party, such as the Navy in this case, could simply choose to label its response action a CERCLA § 104 action and thus bring itself under the protective mantle of SARA § 113(j), it would effectively by-pass SARA § 120 altogether. To allow such a result would be to nullify the congressional amendments.

The language of §§ 210 and 120, with its many references to the EPA Administrator, mandates that the EPA will be extensively involved in formulating and effecting remedial action plans at DOD facilities. Such is currently the case for sites named on the National Priorities List ("NPL"). A situation such as the one at issue here, in which the site in question is not on the NPL and therefore does not require affirmative EPA intervention, may never have come within Congress' conjecture. Had the EPA participated in a meaningful way in the formulation of the Navy's remedial action plan, as is contemplated by § 210 (*See* 10 U.S.C. § 2701(a)(3)), the Navy might have prevailed in arguing that the Court should apply a deferential standard of review based on the administrative record, even though not statutorily required. As it stands, however, the Court is convinced that the EPA's participation in this action has been, at best, *pro forma.* Under these facts, the Court concludes that *de novo* review of the remedial action plan is both warranted and necessary.

## DUE PROCESS

The specific facts of this case are such that giving deference to the Navy's chosen remedial action plan would result in manifest injustice to defendants. Where a plaintiff with such vested interest as the Navy obviously has in this case formulates a remedial action plan, seals the administrative record, and refuses to allow discovery beyond that record, defendants are denied minimal due process rights. *See Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) ("The fundamental requirement of due process is the right to be heard at a meaningful time and in a meaningful manner.") Defendants are entitled to review by an independent decision-maker. *See In re Murchi-*

*son,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). Had the EPA reviewed and approved the remedial action plan devised by the Navy, this might be a different case. As it stands, however, the EPA had virtually no input in formulating the Final Plan.

Thus, relying on both our interpretation of CERCLA and on the due process concerns raised by defendants, the Court concludes that the appropriate scope of review of the Navy's remedial action plan is *de novo* judicial review. All motions for protective orders are DENIED; the parties may go forward with all noticed depositions. Any further disputes involving discovery issues are to be brought before Magistrate Wilken.

SO ORDERED.